

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:24-cr-45 |
| CEARA SMITH, | |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the defendant, CEARA SMITH (hereinafter, "the defendant"), stipulate that the following facts are true and correct, and agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. CEARA SMITH, the defendant herein, resided in Newport News, Virginia, in the Eastern District of Virginia.

2. From in or about April 2020 through in or about at least August 2023, the defendant knowingly engaged in a scheme and artifice to defraud to fraudulently obtain and attempt to obtain money and property under the custody and control of financial institutions by applying for and receiving lines of credit and loans using the names and personal identifiable information (PII) of identity theft victims, which were acquired through deceit and under false pretenses.

3. In or about late 2022, the defendant was in contact with A.D., an active duty member of the United States Air Force, stationed at the Charleston Air Force Base in South Carolina. The defendant represented to A.D. that she was a music concert promoter named "Asia." A.D., who is a musician, was led to believe that he would have the opportunity to perform as an opening act at a concert.



4. A.D. was instructed to pay a fee and to provide his personal information to the defendant, under the pretense that those steps were necessary in order to perform at the concert. When A.D. was unable to complete the fee payment using peer-to-peer payment applications, he provided the defendant with his username and password for PayPal, to allow her to make the payment. A.D. was never hired to perform at a concert as promised.

5. In or about December 2022, the defendant told A.D. about a purported opportunity to make money through the car rental company Turo. The defendant claimed to be an ambassador for Turo. She told A.D. that if A.D. completed a training program with Turo, they would both benefit financially. The defendant offered to complete the training program on behalf of A.D.

6. To that end, A.D. created an online account with Turo, and as part of that process, input his debit card banking information and uploaded a photograph of his driver's license to the account. A.D. then provided the username and password for his Turo account to the defendant. A.D. was told to expect a payment between $10,000 and $20,000, but he never received any payment.

7. In or about January 2023, the defendant submitted an online inquiry, under the name of A.D., to purchase a 2015 Dodge Charger from Your Kar Company, located in Norfolk, Virginia. The defendant, impersonating A.D., communicated with a sales associate at Your Kar Company about purchasing the 2015 Dodge Charger. The defendant attempted to secure funding to purchase the vehicle through the regular financing used by Your Kar Company and through secondary financing options but was unsuccessful. The defendant took each of these steps, as well as the actions set forth below, without the knowledge or consent of A.D.



8.  On or about January 10, 2023, the defendant electronically submitted to Langley Federal Credit Union (LFCU) a loan application for the 2015 Dodge Charger in the amount of $25,005.00, using the name and other PII of A.D., including his social security number, driver's license number, and date of birth, all of which are unique means of identification. LFCU is a financial institution, as defined in 18 U.S.C. § 20. LFCU is a credit union with accounts insured by the National Credit Union Share Insurance Fund.

9.  The defendant, pretending to be A.D., called LFCU and represented that she had the buyer's order from Your Kar Company. The defendant was informed that membership with LFCU was required in order to obtain the requested auto loan. The defendant, impersonating A.D., attempted to apply for membership by phone but was declined after the LFCU membership department was unable to verify A.D.'s identity.

10. Shortly thereafter, the defendant called the LFCU loan fulfillment department and impersonated a LFCU branch manager. The defendant stated that A.D. had been granted membership, and his identity had been verified. The defendant asked the LFCU loan fulfillment department to send verification to Your Kar Company that A.D. is a LFCU accountholder.

11. On or about January 17, 2023, the defendant, impersonating A.D., contacted Your Kar Company and represented that A.D. had acquired the funding through LFCU for purchase of the vehicle. The sales employee at Your Kar Company called LFCU to verify. The LFCU employee, unaware of A.D. having been denied membership due to questionable identity, saw an approved application in the system and allowed the defendant, acting as A.D., to complete the loan and membership applications online. As part of the application process, the defendant emailed A.D.'s identification documents to LFCU. The defendant, impersonating A.D., told LFCU staff

that he could not go into a branch to sign documents and verify identity in person because he was ill with COVID-19 and his wife was in the hospital having twins.

12. The car loan application was received and funded by LFCU that same day. A sales associate from Your Kar Company visited a LFCU branch in Norfolk and picked up a cashier's check in the amount of $25,000.00 for the 2015 Dodge Charger.

13. After Your Kar Company obtained the $25,000.00 cashier's check from LFCU, the defendant, impersonating A.D., completed the paperwork for purchasing the 2015 Dodge Charger online and over the phone. The defendant, acting as A.D., said that his "sister" would drop off the DMV paperwork and that he was unable to do so because he had COVID-19. The defendant, posing as A.D.'s "sister," dropped off the paperwork. The defendant, again acting as A.D.'s "sister," subsequently picked up and took possession of the 2015 Dodge Charger from Your Kar Company.

14. On or about January 17, 2023, the defendant, impersonating A.D., also applied for and received two credit cards and a debit card with LFCU. The defendant, acting as A.D., said that his "sister" would pick up the two credit cards and the debit card. The defendant subsequently picked up the cards, pretending to be A.D.'s sister.

15. Later that day, the defendant made an $800.00 cash advance on one of the LFCU cards obtained in A.D.'s name. She then used another LFCU card obtained in A.D.'s name to make POS purchases at various businesses, including Manhattan Beauty Supply, Cell Fashion, and DoorDash. She attempted to use another card to make a purchase at Journeys, but the card was declined as suspected fraud.

16. On or about January 18, 2023, the defendant, impersonating A.D., called LFCU and asked LFCU to issue new credit cards. LFCU issued new credit cards in A.D.'s name, as



requested. Over the next two days, the defendant used one of those credit cards to conduct several POS purchases at Waffle House, Lyft, DoorDash, Manhattan Beauty Supply, Target, Charmed, Uber, and 7-Eleven. She also conducted two cash advances on that card, in the amounts of $500.00 and $400.00. When that credit card was flagged for suspected fraud, the defendant again contacted LFCU, impersonating A.D., and the LFCU representative unblocked the credit card. She attempted additional purchases, and when the card was again declined, the defendant called LFCU. She asked to speak with a representative but was repeatedly instructed to visit a LFCU branch.

17. On or about January 20, 2023, the defendant called the LFCU Contact Center and impersonated a LFCU staff member from the Yorktown branch. She represented that she helped A.D. and that his identity was verified. Later that day, LFCU was able to contact the real A.D. and informed him that he may have been the victim of identity theft.

18. On or about March 20, 2023, a LFCU collections representative attempted to contact A.D. at the phone number on file, which was used by the defendant, because no payments had been made to either credit card issued in A.D.'s name. The defendant, pretending to be A.D., expressed concern that the credit cards had been blocked and asked when they could be used again. The defendant was transferred to the LFCU Contact Center. A LFCU employee from that department again stated that no payments had been made on the credit cards. The defendant, still impersonating A.D., asked if the credit cards would be unblocked if he made a payment and stated that he was going to be deployed soon.

19. During the same phone call on or about March 20, 2023, the defendant impersonated a LFCU employee named "Erica." She said that A.D. was in her office and that she had verified his identity. She also falsely claimed that A.D. had been waiting in the branch



lobby for over an hour on hold.  The LFCU Contact Center representative stated that A.D. would need to visit a branch.  The defendant, now impersonating A.D., said that he could not visit a LFCU branch because he was about to be deployed.

20. On or about June 23, 2023, LFCU repossessed the 2015 Dodge Charger after payments were not made on the auto loan obtained in A.D.'s name.  LFCU provided permission for law enforcement to search the vehicle, and law enforcement recovered from the Dodge Charger, among other items, a VISA debit card in A.D.'s name, a LFCU business card, receipts from purchases made on May 17 and 20, 2023, using a Mastercard debit card in A.D.'s name, a FedEx package addressed to A.D. at an address in Hampton, Virginia, and a photograph of the defendant and an unknown female.

21. The defendant applied for and received the auto loan from LFCU in the amount of approximately $25,005.00 with the intent to deceive that financial institution and to obtain money under its custody or control.

22. The defendant knew or was willfully blind to the fact that A.D. was a real person.

23. A.D. has never lived in Virginia and was not present in Virginia during any of these events.

24. A.D. did not authorize or benefit from any of the defendant's actions outlined above, unless specifically noted otherwise.  A.D. did not consent to or benefit from the defendant's use of his means of identification to commit bank fraud, in violation of 18 U.S.C. § 1344.

25. The defendant's use of A.D.'s means of identification was without lawful authority.

26. All of these events occurred in the Eastern District of Virginia.

27. This statement of facts includes those facts necessary to support the Plea Agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

28. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 7/23/24

By: _____
Alyson C. Yates
Special Assistant United States Attorney

After consulting with my attorney and pursuant to the Plea Agreement entered into this day between the defendant, CEARA SMITH, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
CEARA SMITH

I am counsel for the defendant, CEARA SMITH. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Nicholas R. Hobbs
Attorney for CEARA SMITH