IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 4:24-cr-45 |
| ) | |
| CEARA SMITH, ) | |
| ) | |
| Defendant. ) | |

## SENTENCING POSITION OF THE UNITED STATES

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Alyson C. Yates, Special Assistant United States Attorney, hereby submits its position with respect to sentencing in this matter. The United States has reviewed the Presentence Investigation Report (PSR), ECF No. 19, and does not dispute any of the facts or factors set forth therein.

The defendant in this matter pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344 (Count 1), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 2). The defendant's applicable Sentencing Guidelines range on Count 1, based on a Total Offense Level of 23 and the defendant's Criminal History Category of II, is 51–63 months' imprisonment, plus 24 months consecutive on Count 2.

For the reasons set forth herein and the reasons to be offered during the sentencing hearing, the United States respectfully requests that the Court impose a total sentence of 87 months (63 months on Count 1, and 24 months on Count 2). Such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

## **BACKGROUND**

As described in the PSR, from around April 2020 through around August 2023, the defendant engaged in an elaborate scheme and artifice to defraud to fraudulently obtain and attempt to obtain money and property under the custody and control of financial institutions by applying for and receiving lines of credit and loans using the names and personal identifiable information (PII) of identity theft victims, which were acquired through deceit and under false pretenses. PSR ¶ 9. Specifically, in 2022, the defendant represented to A.D., an active duty member of the United States Air Force, that she was a music promoter named "Asia." *Id.* The defendant made A.D.— who is also a musician—false promises that she would help him get a gig to perform as an opening act at a concert and receive payment between $10,000 and $20,000. *Id.* Instead, the defendant, impersonating A.D. and using his PII, obtained a car loan for $25,005 and purchased a Dodge Charger in A.D.'s name. *Id.* She further obtained debit cards and credit cards in A.D.'s name, subsequently conducting cash advances and purchases on those cards. *Id.* Prior to the defendant's fraudulent conduct, A.D. noted that his credit score was in the high 600s. *Id.* ¶ 11. But after the defendant obtained automobile loans and credit cards accounts using A.D.'s identity, his credit score dropped to the 400s. *Id.*

Unfortunately, A.D. was not the only victim of the defendant's fraud scheme. Further investigation revealed that the defendant had defrauded four other individuals: T.T., A.L., T.C., and T.M. *Id.* ¶¶ 14, 16–25. As detailed in the PSR, the defendant fraudulently rented an apartment using T.T.'s PII, accumulating $14,000 in unpaid rent. *Id.* ¶ 16. She also used T.T.'s PII to purchase a 2018 Hyundai Genesis for over $34,000, financed by Santander Consumer U.S.A. *Id.*

As to the victim A.L., the defendant convinced A.L., who was searching for a home, that she had a residence available for A.L. to rent and eventually own. *Id.* ¶ 17. The defendant

swindled A.L. into obtaining three loans from USAA Bank, totaling $50,000, which were not used for A.L.'s benefit or ever paid off. *Id.* The defendant also obtained a cellphone using A.L.'s PII, opened and made charges to a credit card in A.L.'s name, purchased a 2019 Chevrolet Silverado using A.L.'s PII (financed by a loan of over $58,000), and purchased a 2022 Hyundai Genesis using A.L.'s PII (financed by a loan of over $68,000). *Id.* ¶¶ 17–18. A.L. submitted a victim impact statement in this case, which has been provided to the Court by Probation. In that impact statement, A.L. explains the emotional, mental, and financial challenges which A.L. has faced due to the defendant's fraud. *Id.* ¶ 19. Essentially, the defendant took everything from A.L. and A.L.'s son. *Id.* A.L. struggled to rent or purchase a home. *Id.* A.L. had no money to pay bills or to move. *Id.* And A.L. is still dealing with loans in collection that remain on her credit report. *Id.*

With regard to T.C., the defendant contacted T.C. after T.C. joined a Facebook group chat seeking assistance with fixing her credit. *Id.* ¶ 20. The defendant, going by the name "Danielle," falsely represented to T.C. that she could help "boost" T.C.'s credit. *Id.* Instead, the defendant used T.C.'s PII to purchase a 2019 Ford Mustang (financed by a loan of around $33,000), convinced T.C. to provide her with $500 under false pretenses, and opened several T-Mobile accounts in T.C.'s name. *Id.*

Finally, the defendant, going by the names "Roxanne" and "Roxi," met T.M. via Instagram in 2021. *Id.* ¶ 21. The defendant represented that she was interested in starting an entertainment business with T.M., who is a music artist. *Id.* Under that false pretense, the defendant convinced T.M. to send her around $10,000. *Id.* She also purchased a 2019 Nissan Altima using T.M.'s PII (financed through a loan of around $33,000). *Id.* T.M. submitted a victim impact statement in this case, which also has been provided to the Court by Probation. In that statement, T.M. described the significant ways in which the defendant negatively impacted T.M.'s life. *Id.* ¶ 22. At the time

of the defendant's fraudulent conduct, T.M. and T.M.'s partner were expecting a child. *Id.* Due to the defendant's lies and manipulation, T.M. became extremely depressed and struggled financially. *Id.* T.M. lost his job and his relationship with his significant other. *Id.* He was unable to finance another residence for his family and has been homeless ever since, being forced to sleep in his car with his son some nights. *Id.*

Based on this conduct, the defendant was charged by Criminal Information with bank fraud, in violation of 18 U.S.C. § 1344, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. ECF No. 2. The defendant waived indictment and pled guilty to those charges. ECF Nos. 6–7, 10. The sentencing in this matter is currently scheduled for December 18, 2024. The defendant has filed a Motion to Continue Sentencing, ECF. 21, which is opposed by the United States and is pending before the Court.

## **OPPOSITION TO THE DEFENDANT'S OBJECTIONS**

Although the defendant originally noted several objections to the PSR, it appears that she has withdrawn all but two: (1) inclusion of paragraph 15 as relevant conduct, and (2) application of the two-level enhancement for sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C), PSR ¶ 45. The United States opposes both objections and will address them in turn.

### **Paragraph 15**

First, the defendant objects to "the inclusion of paragraph 15 as relevant conduct." Position of Def. with Respect to Sent. 1, ECF No. 22 ("Position of Def."). As noted by the defendant, this information does not affect the defendant's Guidelines. *Id.* The Court should overrule this objection and not exclude the information set forth in paragraph 15 of the PSR.

As an initial matter, the defendant does not appear to dispute the accuracy of the information contained in paragraph 15.[1] Indeed, an objecting defendant has "an affirmative duty to make a showing that the information in the presentence report is unreliable, and [to] articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). "A mere objection . . . is not sufficient." *United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998). Without an affirmative showing that the PSR is inaccurate, the Court is "free to adopt the findings of the [PSR] without more specific inquiry or explanation." *Id.*

Rather, the defendant argues that such information is not relevant conduct. The United States would note that the information in paragraph 15 relates to the Dodge Charger that the defendant obtained in A.D.'s name, as outlined in the agreed-upon Statement of Facts. It is, therefore, conduct committed by the defendant during the commission of the offense of conviction or in the course of attempting to avoid detection or responsibility for the offense, and is thus relevant conduct under U.S.S.G. § 1B1.3.

Even if not relevant conduct, however, it is still information relevant to the defendant's history and characteristics that should be considered by the Court at sentencing. The sentencing procedures set forth in the Guidelines and in 18 U.S.C. § 3551 *et seq.* aim to allow courts to consider all information concerning a defendant's background, character, and conduct *without limitation* so that the Court may fashion an appropriate sentence that uses the Guidelines as a starting point (to help reduce unwanted disparities), while also allowing the Court to exercise its traditional discretion. *United States v. Falesbork*, 5 F.3d 715, 722 (4th Cir. 1993). Indeed, 18

---

[1] To the extent the defendant intends to factually challenge the information in this paragraph, the United States will make available Special Agent Noel, Federal Bureau of Investigation (FBI), to testify in support.

5

U.S.C. § 3661 makes clear that "[n]o limitation shall be placed on the information concerning the [defendant's] background, character, and conduct . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," and the Fourth Circuit has repeatedly emphasized the wide latitude judges are given in what to consider, "without regard to its admissibility under the rules of evidence applicable at trial." *United States v. Seay*, 553 F.3d 732, 741–42 (4th Cir. 2009). Therefore, the Court should overrule the defendant's objection to paragraph 15 of the PSR.

**Sophisticated Means Enhancement**

The defendant also objects to the two-level enhancement for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C). PSR ¶ 45. The government disagrees and believes that Probation correctly applied this enhancement because the defendant's conduct more than meets the criteria for this enhancement.

Sophisticated means is "especially complex or especially intricate conduct pertaining to the execution and concealment of an offense." U.S.S.G. § 2B1.1, app. n. 9. The Fourth Circuit has held that sophistication, for purposes of an enhancement under § 2B1.1(b)(10)(C), "requires more than the concealment or complexities inherent in [the offense conduct]." *United States v. Adepoju*, 756 F.3d 250, 257 (4th Cir. 2014). However, "[a] defendant's offense of conviction may involve 'sophisticated means' even if not every aspect of his scheme is complex or intricate." *United States v. Sadr*, 465 F. App'x 278, 281 (4th Cir. 2012) (unpublished) (citing *United States v. Edelmann*, 458 F.3d 791, 816 (8th Cir. 2006)); *see also United States v. Weiss*, 630 F.3d 1263, 1279 (10th Cir. 2010) ("The Guidelines do not require every step of the defendant's scheme to be particularly sophisticated; rather, as made clear by the Guidelines' commentary, the enhancement applies when the execution or concealment of a scheme, viewed as a whole, is especially complex

6

or especially intricate." (internal quotation marks omitted)). Indeed, a defendant "need not use the most complex means possible" to execute or conceal his conduct "for the court to find he used sophisticated means." *United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012) (quoting *United States v. Madoch*, 108 F.3d 761, 766 (7th Cir. 1997)).

Here, the defendant not only stole the individual victims' identities and repeatedly impersonated them, as outlined above, she used multiple aliases (with various, complex backstories and purported professions), frequently impersonated various bank employees and employees from other institutions, targeted victims through various social media platforms, and took advantage of online application processes to thwart detection. Taken as a whole, these actions constitute sophisticated means. *See United States v. White*, 850 F.3d 667, 675 (4th Cir. 2017) ("[T]he sophisticated-means enhancement 'applies where the entirety of a scheme constitutes sophisticated means, even if every individual action is not sophisticated.'"); *United States v. Merilia*, 640 F. App'x 239, 241 (4th Cir. 2016) (per curiam) (noting that, when determining whether an offense involved sophisticated means, "what matters is the sophistication of the scheme as a whole," not the defendant's individual actions). The defendant's objection to this enhancement should be overruled.

## POSITION ON SENTENCING

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the Guidelines "does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007).

Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

A sentencing court should first calculate the range prescribed by the sentencing Guidelines after making the appropriate findings of fact. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Following that calculation, a sentencing court must then "consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.*

### A. The Advisory Guidelines Range

In calculating the offense level, Probation assigned a base offense level of 7 under U.S.S.G. § 2B1.1(a)(1). PSR ¶ 42. Twelve points were then added based on a loss amount of more than $250,000 (*id.* ¶ 43), two points were added because the offense resulted in substantial hardship to one or more victims (*id.* ¶ 44), and two points were added because the offense involved sophisticated means (*id.* ¶ 45). Thus, the defendant's total offense level is 23. *Id.* ¶ 62.

The probation officer also calculated a criminal history level for the defendant, and the United States agrees with those calculations. The defendant has the following juvenile adjudications, with criminal history points noted in parentheses: assault (1); petit larceny (0); assault and battery (0); and violation of an emergency protective order (0). *Id.* ¶¶ 65–68. She also has the following prior adult convictions (again, with criminal history points noted): disorderly house (0); and obtain money by false pretenses (2). *Id.* ¶¶ 71–72. Thus, she has three criminal history points and a criminal history category of II. *Id.* ¶¶ 73–74. The defendant's resulting sentencing Guidelines range is 51–63 months, followed by a mandatory term of 24 months, to be

served consecutively with any other term of imprisonment imposed. *Id.* ¶ 125. As noted above, the United States has no objections or corrections to the PSR.

### B. Section 3553(a) Factors

After the Court has properly calculated the Guidelines range and ruled upon all departure motions, the Court must then consider the factors identified in 18 U.S.C. § 3553(a) to fashion a reasonable sentence. *Gall v. United States*, 552 U.S. 38 (2007). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Here, the § 3553(a) factors discussed below support a total sentence of 87 months.

#### 1. Nature and Circumstances of the Offense

As detailed in the PSR and outlined above, the defendant obtained several individual victims' PII under false pretenses, and then used their identities to obtain loans for high-end vehicles, rent an apartment, and procure cellphone plans, credit cards, and debit cards. She also convinced unknowing victims to take out loans and to send her cash, in the hopes of advancing their careers and bettering their lives. Instead, the defendant destroyed these victims' credit and—as reflected in the interviews of these individuals and the victim impact statements—had a significant, and lasting, negative impact on their lives. For instance, the defendant's fraudulent conduct left A.L. with no money to pay bills. PSR ¶ 19. She took everything from A.L. and A.L.'s son. *Id.* The defendant's actions also caused T.M. to lose his job and his relationship with his significant other, and he still, as of the time of writing the victim impact statement, had not been able to finance another residence. *Id.* ¶ 22. The United States understands that T.M. plans to attend the sentencing hearing in this matter and to address the Court.

In total, the defendant is appropriately attributed with over $336,000 in total loss, and she owes around $85,000 in restitution. *Id.* ¶¶ 25, 35. Those figures are significant, but the real and lasting impact on individual victims' lives makes the defendant's offense conduct even more aggravating. Her offense conduct warrants a total sentence of 87 months' imprisonment.

### 2. History and Characteristics of the Defendant

The defendant, who is 25 years old, was born in Hampton, Virginia. PSR ¶ 89. This basic biographical information was verified by arrest records, but—despite numerous requests by Probation—the defendant failed to return the required release forms and financial documents, making it impossible for Probation to provide other verified information to the Court. *Id.* ¶¶ 40, 89. Thus, the defendant has not fully accepted responsibility for her conduct, and the Court is left primarily with information regarding the defendant's history and characteristics verified only by the defendant's mother. *Id.* ¶¶ 40, 89–123.

The PSR does, however, include the defendant's criminal history, as reflected in court records. The defendant's first juvenile adjudication was for an assault she committed at just 14 years old. *Id.* ¶ 65. During that same sentencing event, she was adjudicated delinquent for petit larceny, assault and battery, and an emergency protective order violation, all committed when the defendant was 15 years old. *Id.* ¶¶ 66–68.

Then, as an adult, the defendant was convicted of disorderly house (2020) and felony obtaining money by false pretenses (2023). *Id.* ¶¶ 71–72. The offense conduct underlying the defendant's prior felony conviction is somewhat reminiscent of aspects of the offense conduct in this case. *Id.* ¶ 72. The defendant, who identified herself as "Asia Honablew," contacted an individual who had listed her vehicle for sale on Facebook Marketplace. *Id.* The defendant told the seller that she would conduct a loan transfer through Langley Federal Credit Union (LFCU) in

10

order to purchase the vehicle. *Id.* Then, someone claiming to work for LFCU sent the seller a bill of sale, and the defendant picked up the vehicle. *Id.* She then sold the vehicle to another individual via Facebook Marketplace and never provided that individual with title to the vehicle, causing him to contact law enforcement. *Id.* When confronted by law enforcement, the defendant had a difficult time formulating a story. *Id.* She claimed to have been manipulated by an older man named "Derrick" to commit the crimes. *Id.*

In July 2024, the defendant's probation was revoked on this felony offense for failure to report and testing positive for marijuana. *Id.* Her suspended sentence of 9 years and 10 months was revoked and resuspended for a period of 10 years. *Id.* She is still on a period of supervised probation. *Id.*

The defendant also has two sets of pending charges in Hampton Circuit Court and Newport News Circuit Court, set for trial in January and February 2025, respectively. *Id.* ¶¶ 76–77. The Hampton charges for obtaining money by false pretenses and forgery are based on her alleged fraudulent sale of the vehicle on Facebook Marketplace, as described above. *Id.* ¶¶ 72, 76. Her pending charges in Newport News for unauthorized use of a vehicle and identity theft to avoid arrest stem from conduct allegedly committed against Joshua Brooks. *Id.* ¶ 77. Mr. Brooks reported that he met the defendant on a dating app, and she talked him into purchasing a vehicle for her, purportedly so they could make money on a rental car app. *Id.* Mr. Brooks allowed the defendant to take possession of the vehicle because he believed that she would transfer financial responsibility to her own name. *Id.* Mr. Brooks contacted police when he realized that he had been scammed. *Id.* After the vehicle was recovered, the defendant was arrested, at which time she provided a false identity to police. *Id.*

Viewed as a whole, the defendant's history and characteristics support the United States's recommendation of a total sentence of 87 months. Her criminal history spans back to the young age of 14, and her adult felony conviction from just last year involves the scamming and victimization of other individuals. Moreover, she failed to comply with the terms of her state felony probation, and her probation was revoked just a few months ago. The defendant has refused to cooperate with Probation's financial investigation, leaving this Court with largely unsubstantiated information. But what we do know about the defendant supports a sentence at the high-end of the Guidelines.

### 3. Need to Afford Adequate Deterrence, Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

The Court must also weigh the need for the sentence imposed to afford adequate specific and general deterrence, to reflect the seriousness of the offense conduct, to promote respect for the law, and to provide just punishment. 18 U.S.C. § 3553(a)(2). In this respect, the government submits that a total sentence of 87 months is justified.

The defendant's criminal history, as outlined above, and her lengthy fraud scheme in this case, reflects a significant need for specific deterrence. Moreover, a substantial term of imprisonment is needed in this case in order to serve the purpose of affording adequate general deterrence. A sentence of 87 months would hopefully discourage others from manipulating individuals and defrauding financial institutions, like the defendant repeatedly did in this case. A significant penalty in this case is needed to provide the appropriate disincentives to those contemplating similar criminal conduct, and to recognize this egregious aspect of the defendant's conduct. *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized."); *United States v.*

12

*Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976) (stating that absent a meaningful term of imprisonment, general deterrence—"the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow"—will not be achieved).

Imposition of 87 months' imprisonment in this case also would reflect the seriousness of the defendant's offense conduct, protect the public from future crimes of the defendant, and appropriately punish the defendant.

## CONCLUSION

For the reasons discussed above, and for the reasons to be presented at the sentencing hearing, the United States respectfully requests that the Court impose a sentence of 87 months (63 months on Count 1, followed by 24 consecutive months on Count 2). Such a sentence takes into consideration each of the relevant factors set forth in 18 U.S.C. § 3553(a), to include the seriousness of the offense, the history and characteristics of the defendant, and the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence, both general and specific.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

By:        /s/
Alyson C. Yates
Special Assistant United States Attorney
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, VA 23606
Office: (757) 591-4026
Fax: (757) 591-0866
Email: alyson.yates@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on December 11, 2024, I electronically filed a copy of the foregoing with the clerk of the court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                    /s/
                                     Alyson C. Yates
                                     Special Assistant United States Attorney