IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 4:24-cr-45 |
| | ) |
| CEARA SMITH, | ) |
| | ) |
| Defendant. | ) |

## **SUPPLEMENTAL POSITION OF THE UNITED STATES ON SENTENCING**

The United States of America, by and through its attorneys, Erik S. Siebert, United States Attorney for the Eastern District of Virginia, and Alyson C. Yates, Special Assistant United States Attorney, hereby submits its supplemental position with respect to sentencing in this matter to address: (1) the defendant's failure to appear at sentencing on December 18, 2024; (2) the defendant's commission of new crimes while on bond and a fugitive; and (3) the defendant's request for a 24-month sentence, which represents the mandatory term of imprisonment for Count Two.

When the United States filed its first position paper in December 2024, it asked for a sentence of 87 months, which was the high-end of the Guidelines at the time. ECF No. 23. But since that time, the defendant failed to appear at sentencing, fled to Georgia, and committed new crimes, which led to the defendant's offense level being enhanced for obstruction of justice, and her criminal history category being increased. The United States now respectfully requests that the Court sentence the defendant to 111 months' imprisonment (87 months on Count 1, and 24 months on Count 2), which is the high-end of the new Guidelines range. Such a sentence would

be sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

## BACKGROUND AND REVISED GUIDELINES

On July 23, 2024, the defendant appeared before Magistrate Judge Lawrence R. Leonard and pled guilty to one count of Bank Fraud, in violation of 18 U.S.C. § 1344 (Count 1), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Count 2). ECF Nos. 6 and 10. She was ordered released on conditions at that time. ECF Nos. 15–16.

The sentencing hearing in this matter was scheduled for December 18, 2025. As further addressed below, the defendant failed to appear on December 18, and a bench warrant was issued. ECF Nos. 26 and 27. The defendant was a fugitive for approximately months, until she was arrested in the state of Georgia for committing several new crimes.

At the time of her scheduled sentencing in December 2024, the defendant's total offense level was 23, based on a base offense level of 7 under U.S.S.G. § 2B1.1(a)(1), plus twelve points based on a loss amount of more than $250,000, plus two points because the offense resulted in substantial hardship to one or more victims, and plus two points because the offense involved sophisticated means. ECF No. 25 ¶¶ 42–45 and 62. Based on the defendant failing to appear at sentencing and remaining a fugitive until her arrest in Georgia, Probation increased the defendant's offense level by two levels for obstruction of justice under U.S.S.G. § 3C.1. PSR ¶¶ 38 and 48. Now, her total offense level is 25. *Id.* ¶ 62.

As for the defendant's criminal history category, at the time of her scheduled sentencing on December 18, 2024, the defendant had three criminal history points and a criminal history category of II. ECF No. 25 ¶¶ 73–74. While the defendant was a fugitive, however, she committed two new crimes in Georgia: (1) Obstruction of an Officer, and (2) Giving False Name,

Address, or Birthdate to Law Enforcement Officers. PSR ¶¶ 139–40. Probation assigned her a criminal history point for each of those respective convictions. *Id.* Thus, she now has five criminal history points, and a corresponding criminal history category of III. *Id.* ¶¶ 73–74.[1]

The defendant's resulting sentencing Guidelines range is 70–87 months, followed by a mandatory term of 24 months, to be served consecutively with any other term of imprisonment imposed. *Id.* ¶ 125.

THE DEFENDANT'S CONDUCT WHILE ON PRETRIAL
RELEASE AND FAILURE TO APPEAR AT SENTENCING

Sentencing in this matter was originally scheduled for December 3, 2024. ECF Nos. 6 and 13. On August 6, 2024, the sentencing hearing was reset for December 18, 2024, at 2:30 p.m. On December 10, 2024, the defendant moved to continue the sentencing hearing due to alleged medical concerns. ECF No. 21. Specifically, the defendant presented a note from a doctor at the Riverside Regional Medical Center indicating that the defendant had been seen and treated in the emergency department on December 8, 2024. ECF No. 21-1. She was subsequently admitted to the hospital and was discharged on December 10, 2024. *Id.* The defendant's motion to continue was opposed by the United States and denied by the Court on December 12, 2024. ECF No. 24. The Court found that the defendant had provided insufficient reason to continue the sentencing and that if she were to be incarcerated, Bureau of Prisons could adequately treat her. *Id.*

In light of the information provided by the defendant in support of her motion to continue, the Federal Bureau of Investigation (FBI) began investigating the circumstances surrounding the defendant's hospitalization. As described in detail in the PSR, this investigation revealed that the defendant had rented a Newport News apartment in M.P.'s name on September 16, 2024, while

---

[1] Paragraph 74 of the PSR states that the defendant's criminal history score is four and/or two, but that appears to be a typo.

3

she was on pretrial release. PSR ¶¶ 127–29. The defendant claimed that it was her friend's apartment and that she stayed there one or two days per week because she was uncomfortable living with her mother, who was the defendant's third-party custodian and with whom she was ordered to reside. *Id.*; ECF No. 16. But further investigation revealed that the defendant had fraudulently obtained the apartment at Riverlands using M.P.'s personal identifiable information (PII), and that no payments had been made since the beginning of the lease, leading to over $6,000 in owed rent. *Id.* ¶ 127–29 and 134.

FBI case agents interviewed M.P. regarding the apartment at Riverlands obtained by the defendant using M.P.'s PII. *Id.* ¶ 130. M.P. advised that she knew the defendant as "Roxanne," and they had met in June 2024. *Id.* The defendant told M.P. about an opportunity to rent out a vehicle on Turo, and M.P. ultimately went with the defendant to purchase a Ford Mustang for that purpose. *Id.* M.P. signed the paperwork for the vehicle, but she never drove the vehicle or received any money from renting the vehicle. *Id.* M.P. later found out that the defendant had obtained a $20,000.00 cash rewards credit card through Navy Federal Credit Union using M.P.'s PII. *Id.* The defendant had also incurred numerous bills and invoices in M.P.'s name, and had a cellular phone with T-Mobile in M.P.'s name, resulting in over $1,300 owed to a collection agency on behalf of T-Mobile. *Id.* ¶¶ 130 and 135.

On the day of the scheduled sentencing in this matter, December 18, 2024, the defendant notified the Court that she had tested positive for COVID-19. The defendant was told that she would be expected to attend the sentencing hearing as scheduled and to wear a mask. Later that day, the Court continued the hearing by thirty minutes, from 2:30 p.m. to 3:00 p.m., due to a scheduling conflict. On December 18, 2024, at 3:15 p.m., after counsel waited for the defendant's appearance, the Court called the defendant's case, but the defendant failed to appear. The

4

defendant's absence was officially noted on the record, and the Court directed a bench warrant to be issued. ECF No. 26.

One of the victims of the defendant's offense conduct, T.M., was present on December 18, and had planned to address the Court. By failing to appear, the defendant demonstrated not only a complete disregard and disrespect for the Court, but also further inconvenienced and victimized T.M., as well as deprived her other victims of closure.[2]

The defendant's commission of new fraud while on bond, reminiscent of her offense conduct in this case, and her failure to appear at sentencing warrant a sentence of 111 months.

### THE DEFENDANT'S COMMISSION OF NEW CRIMES WHILE A FUGITIVE

Despite significant efforts by the government to locate the defendant, she was not apprehended for nearly two months. On January 12, 2025, the defendant was stopped for shoplifting in Gwinnett County, Georgia. *Id.* ¶ 141. She had stolen $140 worth of merchandise. *Id.* ¶ 131. When officers arrived on scene, the defendant provided the name and PII of M.P. *Id.* Her true identity was not known at the time. *Id.* Upon running her fingerprints on a later date, the defendant's identity was discovered, and she was charged with False Identification. *Id.*

On February 14, 2025, the defendant was finally taken into custody. *Id.* ¶ 131. Officers had responded to a car dealership in Kennesaw, Georgia, where the defendant had attempted to buy a vehicle using another person's identity. *Id.* She claimed that Yolanda Smith was co-signing for the vehicle, but when Ms. Smith was contacted, she stated that she believed that she was giving money to the defendant to rent an apartment, and she had no knowledge of the defendant attempting to purchase a vehicle. *Id.* The defendant was arrested on the outstanding warrant for

---

[2] T.M. will once again appear at the defendant's sentencing on May 15, and may choose to make a statement to the Court.

False Identification and additionally charged her with Suspicious Activity and Criminal Trespass. *Id.* The defendant was transported to the Cobb County Jail, and she was convicted of Obstruction of an Officer on February 28, 2025. *Id.* ¶¶ 131 and 139. The defendant was then transferred to Gwinnett County, Georgia, where she was convicted of Giving a False Name, Address, or Birthdate to Law Enforcement Officers. *Id.* ¶ 140.

While the defendant was a fugitive in the instant case, she also failed to appear for her trial on pending fraud-related charges in Newport News Circuit Court on February 3, 2025, and a capias was issued for her arrest. PSR ¶ 77. The defendant additionally missed a trial on pending charges of forgery and identity theft in Hampton Circuit Court on March 10, 2025, while she was in state custody in Georgia. *Id.* ¶¶ 76 and 139–40.

The defendant's commission of new crimes—in another state, nevertheless—while on the run further supports the government's requested sentence of 111 months. Clearly, only a significant sentence of incarceration will specifically deter this defendant. She continued the same type of criminal conduct—theft, using another person's PII, and attempted to purchase a vehicle using yet another victim's information—while the instant case was pending, after she failed to appear for sentencing. This behavior demonstrated a complete disregard for this Court and the law. The defendant has shown no remorse for the harm she has caused the victims of her fraud scheme. Instead, she has persisted in similar criminal conduct. A significant sentence is necessary to instill respect for the law and hopefully prevent this defendant from engaging in a similar course of conduct upon her release.[3]

---

[3] It is also worth noting that in recent fraud cases in this district where fraud defendants absconded and committed new crimes, courts have imposed lengthy sentences without concern about sentencing disparities. *See, e.g., United States v. Clarence M. Rice, Jr.*, No. 4:21-cr-60 (imposing sentence of 180 months for Wire Fraud and Evasion of Income Tax Assessment where the defendant failed to appear at sentencing and absconded); *United States v. Troy McFarland*, 4:20-

## THE DEFENDANT'S REQUESTED SENTENCE OF
## 24 MONTHS IGNORES THE STATUTORY INTENT OF § 1028A

In the defendant's sentencing position paper, she requests a sentence of 24 months, which is the mandatory sentence on Count 2, Aggravated Identity Theft. In other words, the defendant is asking for no period of incarceration on Count 1, Bank Fraud. Such a sentence would be woefully inadequate and would not take into consideration Congress's intent in imposing a mandatory term of two years' imprisonment for Aggravated Identity Theft. Moreover, it would afford the defendant a windfall when she has perpetrated new fraud.

The plain language of the statute at issue, 18 U.S.C. § 1028A, prohibits a sentencing court from "in any way reduc[ing] the term imposed for [the predicate crime] so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of th[at] section." 18 U.S.C. § 1028A(b)(3). The Supreme Court has distinguished § 1028A from other mandatory minimum statutes like 18 U.S.C. § 924(c) that allow a sentencing court the flexibility to consider a mandatory minimum term when determining the appropriate sentence for the predicate offense. *See Dean v. United States*, 137 S. Ct. 1170, 1177 (2017) (noting that § 1028A clearly evidences Congress's intent to "bar consideration of a mandatory minimum" when determining the appropriate sentence for the predicate offense).

The clear directive of § 1028A is consistent with the legislative history of the statute. In 2004, Congress passed the Identity Theft Penalty Enhancement Act through which it sought to "address[] the growing problem of identity theft" by putting an end to the "short terms of

---

cr-44 (imposing sentence of 92 months for Conspiracy to Commit Wire Fraud, Wire Fraud, and Aggravated Identity Theft where the defendant absconded and continued committing crimes after pleading guilty). Thus, similar defendants have received sentences of around the term of imprisonment requested by the government in this case, and such a sentence would not lead to unwarranted sentencing disparities.

imprisonment and probation" commonly imposed on "identity thieves." H.R. Rep. 108-528 (June 8, 2004), *available at* 2004 WL 5685676. In describing the need for this legislation, Congress recited the Federal Trade Commission's analysis of over 160,000 identity theft complaints. Congress cited several representative examples of lenient sentences for credit card fraud and other analogous crimes as justification for why courts should impose longer sentences for these offenses. Accordingly, among the provisions of the of the Act was a "mandatory consecutive penalty enhancement of 2 years for any individual who knowingly transfers, possesses, or uses the means of identification of another to commit a serious federal predicate offense." *Id*. As codified in 18 U.S.C. §1028A, this penalty enhancement "is in addition to any term of imprisonment for the underlying offense." *Id*. And § 1028A "contains several provisions to ensure the intent of th[e] legislation is carried out," including the prohibition against "reducing the underlying term of imprisonment." *Id*.

Both the plain language and the legislative history of § 1028A evince the very serious nature of identity theft offenses. Indeed, such offenses inflict injuries beyond those generally associated with the predicate offenses. The defendant's crimes hurt ordinary people just trying to pay their bills and have ruinous effects on the victims' credit. These offenses caused substantial intangible harm as well—stress, uncertainty, financial strain, and insecurity, to name only a few. In addition to these real and significant harms, offenses perpetrated through the use of stolen identities, such as those committed by the defendant, are shrouded in an air of apparent legitimacy, preventing the targeted institutions from guarding against fraudulent conduct.

Thus, the Court's sentence of Count 1 should not compensate or otherwise account for the mandatory term of imprisonment required by law on Count 2.

## **CONCLUSION**

The defendant's conduct while awaiting sentencing, and while on the run after failing to appear at sentencing, was abhorrent. These developments warrant a significantly lengthier sentence of incarceration. For the reasons discussed above, those stated in the government's previously filed position paper, and the reasons to be presented at the sentencing hearing, the United States respectfully requests that the Court impose a sentence of 111 months (87 months on Count 1, followed by 24 consecutive months on Count 2).

                                        Respectfully Submitted,

                                        Erik S. Siebert
                                        United States Attorney

By:           /s/
                                        Alyson C. Yates
                                        Special Assistant United States Attorney
                                        United States Attorney's Office
                                        One City Center
                                        11815 Fountain Way, Suite 200
                                        Newport News, VA 23606
                                        Office: (757) 591-4026
                                        Fax: (757) 591-0866
                                        Email: alyson.yates@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on May 8, 2025, I electronically filed a copy of the foregoing with the clerk of the court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/
Alyson C. Yates
Special Assistant United States Attorney
